UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
═══════════════════════════════════════════════════

KAREN A. OTTATI,

              Plaintiff,

    -v-                          5:06-CV-1370  (NPM / DEP)

CITY OF AMSTERDAM,
AMSTERDAM POLICE DEPARTMENT,
JOSEPH EMANUELE, III, individually
and as Mayor of the City of Amsterdam,
THOMAS V. N. BROWNELL, individually
and as Chief of Amsterdam Police Department,

              Defendants.

═══════════════════════════════════════════════════

APPEARANCES:                  OF COUNSEL:

SCHWARTZ LAW FIRM         CHARLES R. SCHWARTZ, ESQ.
Attorney for Plaintiff
191 Guy Park Avenue
Amsterdam, NY 12010

GIRVIN & FERLAZZO, P.C.      GREGG T. JOHNSON, ESQ.
Attorney for Defendants City of
Amsterdam, Amsterdam Police
Department, and Joseph Emanuele
20 Corporate Woods Blvd., 2nd Floor
Albany, NY 12211-2350

GIRVIN & FERLAZZO, P.C.      JACINDA HALL CONBOY, ESQ.
Attorney for Defendants City of
Amsterdam, Amsterdam Police
Department, and Joseph Emanuele
20 Corporate Woods Blvd., 2nd Floor
Albany, NY 12211-2350

GIRVIN & FERLAZZO, P.C.                    SCOTT P. QUESNEL, ESQ.
Attorney for Defendants City of
Amsterdam, Amsterdam Police
Department, and Joseph Emanuele
20 Corporate Woods Blvd., 2nd Floor
Albany, NY 12211-2350

PENNOCK, BREEDLOVE & NOLL, LLP            JOHN H. PENNOCK, ESQ.
Attorney for Defendant Thomas V. N. Brownell
1407 Route 9, Nine North Bldg. 4, 2nd Floor
Clifton Park, NY 12065

BRENNAN & WHITE, LLP                      DANIEL J. STEWART, ESQ.
Attorney for Defendant Thomas V. N. Brownell
163 Haviland Road
Queensbury, NY 12801

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

Plaintiff Karen A. Otatti ("Ottati") brings this action for a violation of her

civil rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et seq., as amended by the Civil Rights Act of 1991("Title VII") for sex-

based employment discrimination.  Ottati also seeks relief and/or damages for

violation of her rights as guaranteed by the First, Fifth, and Fourteenth

Amendments to the United States Constitution, pursuant to 42 U.S.C. §§ 1981,

1983, 1985, 1986, and 1988.  Ottati seeks state relief under Article I, § 11 of the

New York State Constitution and Article 15 (Human Rights Law) of the Executive

Law of the State of New York ("NYSHRL").  Ottati alleges sexual harassment and

hostile work environment by Thomas V. N. Brownell, individually and in his

official capacity as Chief of the Amsterdam Police Department ("Brownell")

against herself.  Ottati alleges the condoning of said sexual harassment and hostile

work environment by the defendants City of Amsterdam ("City"), City of

Amsterdam Police Department ("APD"), Joseph Emanuele, III, individually and in

his official capacity as Mayor of the City of Amsterdam ("Emanuele")

(collectively, "City defendants"), and retaliation against Ottati and her family by

all defendants because she filed complaints with the New York State Division of

Human Rights and the Equal Employment Opportunity Commission ("EEOC").

Ottati further alleges constructive discharge and conspiracy by Emanuele and the

City Corporation Counsel Robert Going [1] ("Going"), and the intentional infliction

of emotional distress ("IIED") by all defendants.

　　　　The court has federal question jurisdiction over this matter pursuant to 28

U.S.C. § 1331.  Currently before the court is a motion by the City defendants to

dismiss the complaint in its entirety (Doc. No. 10) pursuant to the Federal Rules of

---

[1]　　　Despite being named as a conspirator in the complaint, Going is not a named defendant in this case.

Civil Procedure ("Fed. R. Civ. P.") Rule 12(c)[2], or in the alternative, to strike

certain portions of Ottati's complaint pursuant to Fed. R. Civ. P. Rule 12(f).[3]  For

the reasons set forth below, this motion will be granted in part and denied in part.

On July 13, 2007, Brownell requested and was granted permission to file his

motion to dismiss pursuant to Rule 12(b) and (c).   In the interest of judicial

economy, and because Brownell "specifically adopts each and every argument

raised by the City of Amsterdam defendants, as set forth in their motion papers ..."

(Doc. No 25-4), the motions will be considered together.  Brownell's motion will

also be granted in part and denied in part.

## I.      BACKGROUND

The following facts are taken from Ottati's complaint and are presumed true

for the purpose of these motions.  Ottati worked for the APD and defendant

---

[2]      Fed. R. Civ. P. Rule 12(c) is a motion for judgment on the pleadings, whereas Rule 12(b)(6) is a motion to dismiss for failure to state a claim.  Because the standard of review set forth below for both rules is the same, and because defendants' memorandum of law purports, inter alia, to seek dismissal for failure to state a claim, the court will construe defendants' motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted.

[3]      A Rule 12(f) motion to strike allows the court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: **(1)** on its own; or **(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading. (West 2008).

Brownell as a keyboard specialist, beginning in February of 2002.[4]  In April of

2002, Brownell allegedly began to sexually harass Ottati on the job.  The sexual

harassment included but was not limited to Brownell making sexual comments to

Ottati, showing Ottati pornographic materials, and sending emails to Ottati which

contained photographs of nude males and females.  Some of the photos were

sexually explicit.  Sometime in 2002, there was an alleged incident where Ottati

was attempting to put on her jacket and Brownell attempted to assist by placing

one of her jacket sleeves in his fly, presumably so when Ottati put on her jacket

her hand would come in contact with his genitalia.

    In October of 2002, Ottati complained about Brownell's inappropriate

behavior, first to Brownell himself, and thereafter to then-Deputy Mayor

Emanuele.  In late October or early November of 2002, Ottati printed the above-

mentioned emails and gave them to her husband, A. Paul Ottati ("Paul"), who

presented the emails to Emanuele pursuant to Emanuele's request.  Emanuele was

elected mayor of the City in November of 2003.  Subsequent to his election,

Emanuele told Ottati that he would remove Brownell from his position because of

his behavior toward Ottati.  In lieu of taking any action to remove Brownell,

---

[4]        Ottati's complaint indicates that she also worked for Fire Chief Richard Liberti.
Since no complaints are made against the fire chief or the fire department, references to same
will be ignored in this memorandum of decision.

however, Emanuele transferred Ottati from the APD to the mayor's office in December of 2004.

In May of 2005, Ottati was transferred back to the APD with assurances that Brownell's inappropriate behavior would cease.  The inappropriate and offensive e-mails from Brownell[5] as well as his inappropriate conduct immediately resumed. On or about May 31, 2005, Brownell made further inappropriate comments to Ottati after showing her an article on fellatio, and asked her inappropriate questions about Ottati's and her husband's intimate marital life.  Brownell continued the offending conversation with Ottati's co-workers.  In early June of 2005, Mayor Emanuele's wife allegedly learned that Ottati was going to lodge a complaint against Brownell.  The mayor's wife then shared this information with Brownell.  Ottati alleges that as a result, Brownell retaliated by no longer allowing her to use the private bathroom or to go into his office, which was located in close proximity to her work space.  Ottati alleges that this action had a detrimental effect on her work performance.

On June 15, 2005, Ottati made complaints about the sexual harassment to the City's employment relations department and to the mayor's secretary.  Ottati

---

[5]        A copy of an offending email with a number of attachments was annexed to Ottati's complaint as Exhibit A.

also complained to Corporation Counsel Going.[6]  On June 16, 2005, Ottati went

on disability leave from her job.  Shortly thereafter, Ottati had a telephone

conference with Lisa F. Joslin ("Joslin"), an attorney with the law firm of Deily,

Mooney & Glastetter, LLP, to discuss the particulars of her case and to seek

representation.  On July 8, 2005, Ottati filed a complaint with the New York State

Division of Human Rights[7] against the City, APD and Brownell.

On July 22, 2005, Going requested that Ottati appear at a meeting to discuss

the sexual harassment complaint.  At that meeting, it was determined that Ottati

would continue to work in the public safety building in a different office,

comparable to her present office, yet away from Brownell.  Going promised to

produce and provide Ottati with forms upon which Ottati could set forth any future

complaints Ottati might have.[8]  Ottati alleges that she informed Going at the

meeting that she was uncomfortable with him investigating the allegations of

sexual harassment because he was on the email list as a recipient of the materials

---

[6]     Prior to becoming Corporation Counsel for the City, Going was a family court judge for Montgomery County.  He was removed from the job after he was found to have engaged in personal behavior including, inter alia, sexual harassment and creation of a hostile work environment at the courthouse. Ottati Complaint, Exh. C.; See also In re Going, 97 N.Y. 2d 121 (N.Y. 2001).

[7]     Claim # 10106681 & Federal Charge # 16GA504177; Complaint, Exh. B.

[8]     Ottati alleges that the City produced the form at a much later date.

7

Ottati deemed inappropriate and offensive.

Shortly after the July 22, 2005 meeting, Ottati and her husband met with Emanuele and reiterated that they were uncomfortable with Going investigating her case, not only because of his inclusion on Brownell's allegedly inappropriate emails but also because of Going's aforementioned publicized ouster as Montgomery County family court judge.  Ottati alleges that at that meeting, she and her husband demanded that Emanuele remove Brownell from his job.  Ottati also alleges that shortly after the meeting, the City retained Joslin, the attorney with whom Ottati had previously conferred, to investigate Ottati's claims against the City.  A report was allegedly generated by Attorney Joslin pursuant to that investigation (the "Joslin report"), clearing the City and Brownell of any wrongdoing.  Despite demands from a city alderman and the State Division of Human Rights, the City allegedly refused to release the Joslin report.[9]

On August 30, 2005, Ottati was informed by her union representative that she would be working at the waste water treatment plant.  The union representative allegedly told Ottati "off the record," (Complaint at ¶ 8.Y) that

_____

[9]     The City defendants requested a protective order to govern the disclosure of personnel records of current and former City employees, the Joslin report and the "recreational" emails sent between Ottati and Brownell. On February 29, 2008, Magistrate Judge Peebles granted a protective order governing the use and dissemination of, inter alia, the Joslin investigative report, disclosing same only to the parties and their counsel. (Doc. No. 46).

Emanuele and Going intended to create a sham position, i.e., they were going to

place a table at the wastewater treatment plant, with no computer, phone or work.

The expected result was that Ottati would show up for work every day and do

nothing.  Ottati alleges that she visited the plant and confirmed this allegation.  On

August 31, 2005, the union representative resigned his union position after being

chastised  by Emanuele for informing Ottati about the waste water treatment plant

plans.

On September 3, 2005, while Ottati was still off the job on disability, she

learned that Emanuele and Brownell would be taping her participation in a bocce

tournament.  At the tournament, an individual named Greg Valenti was taping

Ottati when he was approached by Ottati's husband.  An altercation ensued

between the two men.  Ottati's husband then approached the mayor's wife about

the taping, and was thereafter verbally attacked by the mayor's wife.  On

September 8, 2005, two Orders of Protection were issued,[10] ordering Ottati's

husband to stay away from Emanuele and his wife. (Complaint at ¶ 8.EE).

On September 6, 2005, Ottati alleges that she and her husband went to the

wastewater treatment plant, where plant workers informed them that although

there was no work for Ottati, they had been instructed to set up a desk and a chair

---

[10]	The complaint was not specific as to facts surrounding or the issuer of the orders.

for her.  There was no phone or computer or any other office supplies made

available for Ottati's use.  Ottati contacted the deputy chief of the APD and asked

him where she would be assigned to work.  The deputy chief stated that Brownell

did not want Ottati back on the premises.  Ottati alleges that she was informed by

one Joseph Isabel that he had been instructed by members of his political party to

"treat [Ottati] like shit" while she was at City Hall, but Mr. Isabel refused.

Complaint, ¶ 8. DD.  As a result of the foregoing, Ottati filed a claim for

retaliation with the New York State Department of Human Rights[11] on September

22, 2005.

On July 24, 2006, Ottati had a probable cause hearing regarding her two

Human Rights Department claims.  Ottati, her husband Paul, Emanuele and

Brownell were present.  Although it was noted that there was an order of

protection in place ordering  Paul to stay away from Emanuele, Emanuele "and the

other parties" (Complaint at ¶ 59) affirmatively stated that they wanted to be in the

room when Paul testified.  Subsequent to that hearing, in early August, Emanuele

had Paul arrested for violating the aforementioned order of protection at the July

24, 2006 hearing.  Because of this pending criminal matter, Ottati asserts that her

husband's health has been deteriorating.

---

[11]      Case # 10107777 & Federal Charge # 16GA505057; Complaint, Exh. D.

On July 31, 2006, the New York State Division of Human Rights dismissed Ottati's administrative claims on the grounds of administrative inconvenience, stating the following reason: "The complainant is proceeding with this case in Federal District Court, in which forum all of the issues pertaining to this case can be resolved." Complaint, Exh. F.  On August 15, 2006, Ottati received right to sue letters from the Equal Employment Opportunity Commission ("EEOC"), allowing her to file a lawsuit in federal court.  Ottati filed this action on November 13, 2006.

The court has parsed Ottati's twenty-one count complaint and isolated five distinct claims, with four claims **against all defendants**: (1) sexual harassment and hostile work environment pursuant to Title VII;  the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983; and Article I, § 11 of the New York State Constitution and Article 15 (Human Rights Law) of the Executive Law of New York State; (2) retaliation pursuant to Title VII;  the First and Fifth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1981 and 1983; and Article I, § 11 of the New York State Constitution and Article 15 (Human Rights Law) of the Executive Law of New York State; (3) Constructive discharge pursuant to Title VII and Article I, § 11 of the New York State Constitution and Article 15 (Human Rights Law) of the

Executive Law of New York State; and (4) state law claims of intentional

infliction of emotional distress. Ottati also alleges one claim of conspiracy against

the City, Emanuele, and Going only, pursuant to 42 U.S.C. § 1985 and 1986.

On January 9, 2007, the City filed its answer to the complaint.  On January

23, 2007, Brownell filed his answer.[12]  On January 26, 2007, the City filed a

motion to dismiss pursuant to Fed. R. Civ. P. Rule 12, §§ (c) and/or (b), and (f).

On July 13, 2007, nearly six months after the City filed its motion to dismiss,

Brownell filed a motion to dismiss pursuant to Rule 12(b) and (c).

## II.  LEGAL STANDARDS

As a preliminary matter, the court notes that the APD is a department within

the City, and not a distinct separate legal entity. (Doc. No. 10-2, n.1).  Although a

municipality is subject to suit pursuant to 42 U.S.C. § 1983, see Monell v. Dept. of

Social Services of City of New York, 436 U.S. 658, 690 (1978), a municipal

police department "cannot sue or be sued because it doesn't exist separate and

apart from the municipality and does not have its own legal identity." Baker v.

Willett, 42 F. Supp.2d 192, 198 (N.D.N.Y. 1999). See also Leland v. Moran, 100

---

[12]        The court notes that despite representation by separate and discrete counsel, Brownell's answer (Doc. No. 9) was essentially a carbon copy of the City's (Doc. No. 8), with a few minor variations/omissions and a different font.  In his July 13, 2007 motion to dismiss, Brownell "specifically adopts each and every argument raised by the City of Amsterdam defendants, as set forth in their motion papers ... dated January 26, 2007." (Doc. No. 25-4 at p. 2).

F. Supp.2d 140, 145 (N.D.N.Y. 2000).  Consequently, the APD has no legal

capacity to sue or be sued.  For this reason the court will, <u>sua sponte,</u> strike the

APD as a defendant in this case.

City defendants raise thirteen distinct points in their motion to dismiss,

presented in no particular order.  Ottati opposes the motion with six points of her

own, also in no discernible order that correlates to the points in defendants'

memorandum, nor does Ottati address all the issues presented in the motion to

dismiss. For the sake of judicial economy, the court will set forth the relevant case

law, then proceed to address the defendants' points in some semblance of order.

### A.    Rule 12 Motion To Dismiss Standard

The function of a motion to dismiss is "merely to assess the legal feasibility

of the complaint, not to assay the weight of the evidence which might be offered in

support thereof." <u>Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.</u>,

748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the court

must accept as true the well pleaded allegations of the complaint. <u>Albright v.</u>

<u>Oliver</u>, 510 U.S. 266, 268, 114 S.Ct. 807 (1994).  In addition, the allegations of

the complaint should be construed favorably to the pleader. <u>Scheuer v. Rhodes</u>,

416 U.S. 232, 236, 94 S.Ct 1683 (1973).  "[W]hen a complaint adequately states a

claim, it may not be dismissed based on a district court's assessment that the

plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Bell Atlantic Corp. V. Twombly, 127 S. Ct. 1955, 1969 n.8 (May 21, 2007).[13]  To meet the standard of adequacy, the complaint should contain "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.  "In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as 'documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

As stated above, the court will construe the defendants' motion as a motion to dismiss.  Despite fashioning their motion as a motion to dismiss pursuant to Rule 12(c), the memorandum of law accompanying the motion requests the court to dismiss the complaint for failure to state a claim upon which relief may be granted, and the defendants set forth Rule 12(b)(6) case law as the standard for

---

[13]    In Bell Atlantic Corp., supra, the Supreme Court purported to abrogate the long standing language in Conley v. Gibson, which articulated that "a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "Bell Atlantic asserted that this 'no set of facts' language 'has earned its retirement' and is 'best forgotten.' " Iqbal v. Hasty, 490 F.3d 143, 155 (2d Cir.2007).  However, the Second Circuit  noted that "just two weeks after issuing its opinion in Bell Atlantic, the Court cited it for the traditional proposition that '[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]'; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Iqbal, 490 F.3d at 157.

14

review.  "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." <u>Cleveland v. Caplaw Enterprises</u>, 448 F. 3d 518, 521 (2d Cir. 2006).  "This standard is applied with particular strictness when the plaintiff complains of a civil rights violation." <u>Id.</u>, citing <u>Irish Lesbian and Gay Org. v. Guliani</u>, 143 F.3d 638, 644 (2d Cir. 1998).  "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss. <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 515 (2002).  "[T]he pleading requirements in discrimination cases are very lenient, even <u>de minimus</u>." <u>Deravin v. Kerik</u>, 335 F.3d 195, 200 (2d Cir. 2003).  This court has no evidence before it that <u>Bell Atlantic</u> has heightened the lenient pleading requirements in discrimination cases.

## B.    Rule 12(f) Motion to Strike

The defendants move for an order striking Ottati's complaint in its entirety with prejudice pursuant to Rule 12(c), "and/or ... striking certain portions of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(f) ...." (Doc. No. 10).

Fed. R. Civ. P. Rule 12(f) states that

[u]pon motion made by party responding to a pleading or,

> if no responsive pleading is permitted by these rules, upon
> motion made by a party within 20 days after the service of
> the pleading on a party or upon the court's own initiative
> at any time, the court may order stricken from any pleading
> any insufficient defense or any redundant, immaterial,
> impertinent, or scandalous matter.

Fed. R. Civ. P. Rule 12(f) (West 2008).

"In deciding whether to strike a Rule 12(f) motion on the ground that the

matter is impertinent and immaterial, it is settled that the motion will be denied,

unless it can be shown that no evidence in support of the allegation would be

admissible." Lipskey v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir.

1976). "Usually the questions of relevancy and admissibility in general require the

context of an ongoing and unfolding trial in which to be properly decided. And

ordinarily neither a district court nor an appellate court should decide to strike a

portion of a complaint on the grounds that the material could not possibly be

relevant on the sterile field of the pleadings alone." Id. (internal citations and

quotations omitted).

Defendants move this court to strike the information about Going's ouster

as Montgomery County Family Court Judge, contained in paragraph 8U of Ottati's

complaint (and the supporting documentation attached to the complaint as Exhibit

C), as completely irrelevant. The court is loathe to do so at this juncture. Ottati

16

alleges conspiracy by the City, through the actions of Emanuele and Going, to deprive Ottati of equal protection of the laws or equal privileges or immunities under the law by influencing or interfering with City authorities.  Ottati complained to Going about Brownell's conduct, and Going was the party that directed Ottati, and possibly her husband Paul, to attend the meeting where Paul was ultimately found to have violated the order of protection.  Going was also a recipient on some of the offending emails.  As stated supra, the relevancy and admissibility of the information submitted will be decided in the context of the ongoing discovery and unfolding trial.  At this stage of the proceedings, the court denies defendants' motion to strike the information contained in paragraph 8U and Exhibit C.

## C.     42 U.S.C.A. § 1983 Generally

Ottati alleges sexual harassment and retaliation claims against the defendants in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution.  In order to prevail on a claim under  42 U.S.C.A. § 1983, a plaintiff must establish the violation of a right secured by the Constitution and laws of the United States, and that the violation was committed by a person acting under color of state law.  Section 1983 states in pertinent part that

> Every person who, under color of any statute, ordinance,

17

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable....

42 U.S.C.A. § 1983 (West 2008).

The Second Circuit has held that "sex-based discrimination may be actionable under § 1983 as a violation of equal protection . . .Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006).  In the case at bar, it is undisputed that the defendants were acting under the color of state law.

### D.    Title VII of the Civil Rights Act of 1964

Title VII states in pertinent part that "[i]t shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such

individual's race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e-2(a)(1) (West 2008).  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367 (1993) (internal citations and quotations omitted).  "In determining whether a work environment is sufficiently hostile or abusive to violate Title VII, we look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 75 (2d Cir. 2001).  "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment ... The incidents of allegedly offensive conduct must also be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id. (internal citations and quotations omitted).

The seminal case law on liability of the employer is the so-called Faragher/Ellerth doctrine.  In the Supreme Court cases of Faragher v. City of Boca

Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998) and Burlington Industries, Inc. v.

Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998), the Court held that

> where no adverse employment action is taken, there may
> be an affirmative defense to liability.  The defense
> comprises two necessary elements: (1) that the employer
> exercised reasonable care to prevent and correct
> promptly any sexual harassing behavior, and (2) that the
> plaintiff employee unreasonably failed to take advantage
> of any preventative or corrective opportunities provided
> by the employer or to avoid harm otherwise. Faragher,
> 524 U.S. at 806; Ellerth, 524 U.S. at 763.

Turner v. Olympic Regional Development Authority, 89 F.Supp 2d 241 (N.D.N.Y.

2000).

## III.   DISCUSSION

### A.    Discrimination Claims

#### 1.    Sexual harassment

Ottati brings her claim of sexual harassment via hostile work environment

under both federal law and New York State law.  This court must "analyze [a

plaintiff's] federal and state law claims together because the Second Circuit

applies federal standards of proof to discrimination claims brought under

NYHRL." Smith v. Niagara Frontier Transp. Authority, 2007 WL 1119797 at * 5

(W.D.N.Y. 2007) (citing Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir.

2003); Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997) ("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII.")).  "The standard governing sex discrimination claims is the same whether pursued under Title VII or the Human Rights Law." Prystajko v. Lowe's Home Centers, Inc., 2007 WL 781932 at *4 (W.D.N.Y. 2007) (Telesca, J.);  Perks v. Town of Huntington, 251 F.Supp.2d 1143, 1158 (E.D.N.Y.2003)  ("In the determination of whether sexual harassment has occurred, claims brought under Title VII and the NYHRL can be evaluated identically").  Accordingly, this court analyzes Ottati's claims under federal law.  As stated above, the difference between a § 1983 claim and a Title VII claim is that under Title VII, the claim cannot be brought against individuals. Accordingly, any and all Title VII claims brought against Emanuele and Brownell in their individual capacities will be dismissed as a matter of law.

Title VII recognizes two forms of sexual harassment: "direct discrimination (the so-called 'quid pro quo' variety) ... and 'hostile workplace environment' harassment." Leibovitz v. New York City Transit Authority, 252 F.3d 179, 188 (2d Cir.2001).  To establish a quid pro quo claim, a plaintiff must show "that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms,

conditions or privileges of her employment." <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 356 (2d Cir.2001), cert. denied, <u>Potter v. Fitzgerald</u>, 536 U.S. 922, 122 S.Ct. 2586 (2002) (internal quotation marks omitted). A hostile work environment claim requires plaintiff to demonstrate: "(1) that she is a member of a protected group; (2) that she was the subject of unwelcome advances; (3) that the harassment was based upon her sex; and (4) that the harassment affected a term, condition or privilege of employment." <u>Cosgrove v. Sears, Roebuck & Co.</u>, 9 F.3d 1033, 1042 (2d Cir.1993).  In order to prevail under either test, a plaintiff must prove that the defendant's conduct was unwelcome.  "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.' " <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive -- that is, ... creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" <u>Patane v. Clark</u>, 508 F.3d at 113 (quoting <u>Gregory v. Daly</u>, 243 F.3d 687, 691-92 (2d Cir.2001).

Construing the complaint in Ottati's favor, and against the moving party as

22

it is required to do, the court finds that Ottati has stated a claim for sexual harassment via hostile work environment.   Ottati is a member of a protected group.  She alleges that she was the subject of unwelcome advances and that the harassment was based upon her sex, and she argues that the harassment affected a term, condition or privilege of employment.   Defendants' motion to dismiss this claim will be denied.

## B.    Retaliation

Ottati claims that all defendants retaliated against her, pursuant to state law and federal law, § 1983 and Title VII, for complaining about the alleged discrimination.  The court will initially address Title VII retaliation.

### 1.    Title VII retaliation

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (West 2008).

"To state a claim for retaliation in violation of Title VII, a plaintiff must

plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d at 115 (citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir.2004)).

2.      Retaliation pursuant to Section 1983

The court notes that Ottati claims four counts of retaliation pursuant to 42 U.S.C. § 1981.[14]  Defendants move to dismiss as Ottati has made no claims that she has been denied the right to contract with any defendant.  The court concurs, and Ottati's retaliation claims pursuant to § 1981 will be dismissed.

Ottati also claims retaliation under the First and Fifth Amendments to the U.S. Constitution.  The defendants seek to dismiss Ottati's First Amendment retaliation claims for failure to state a cause of action, and because Ottati did not

---

[14]      42 U.S.C.A. § 1981 states that (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other; (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship; and (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law. 42 U.S.C.A. § 1981(West 2008).

24

suffer an adverse employment action.  To succeed on a First Amendment

retaliation claim pursuant to § 1983, Ottati must show by a preponderance of the

evidence that "(1) [her] speech was constitutionally protected, (2) [she] suffered an

adverse employment decision, and (3) a causal connection exists between [her]

speech and the adverse employment determination against her, so that it can be

said that [her] speech was a motivating factor in the determination." Gorman-

Bakos v. Cornell Co-op. Extension of Schenectady County, 252 F.3d 545, 553 (2d

Cir. 2001).  "Plaintiff has the initial burden of showing that an improper motive

played a substantial part in the defendant's action.  The burden then shifts to

defendant to show it would have taken exactly the same action absent the

improper motive." Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir. 2003).

　　A plaintiff must first demonstrate that he or she was engaged in protected

activity, and that the employer was aware of that activity.  Protected participation

or opposition ("protected activity") under Title VII "refers to action taken to

protest or oppose statutorily prohibited discrimination." Wright v. Stern, 450

F.Supp. 2d 335, 373 (S.D.N.Y. 2006).  "Informal as well as formal complaints

constitute protected activity." Id. (citing Sumner v. United States Postal Service,

899 F.2d 203, 209 (2d Cir. 1990).  The second prong for a claim of First

Amendment retaliation requires a plaintiff to demonstrate that he or she was

subject to an adverse employment action. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2414-14 (2006). "Courts must examine closely each case to determine whether the challenged employment action reaches the level of 'adverse' ... An adverse action is not defined solely in terms of job termination or reduced wages and benefits ... Less flagrant reprisals by employers may indeed be adverse. [H]owever, not every unpleasant matter short of discharge or demotion creates a cause of action for retaliation." Wright, 450 F.Supp.2d at 373 (citing Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997)) (internal quotations omitted).

Finally, there must be a causal connection between the protected activity and the alleged retaliatory action. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment or fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd of Educ., 232 F.3d 111, 117 (2d Cir.

26

2000).

The court first finds that Ottati was engaged in protected activity, i.e., her complaint about Brownell's alleged harassing behavior, and that the employer was aware of that activity, satisfying the first two prongs of Ottati's prima facie case for retaliation.  As for the third prong, the defendants assert that the four incidents which Ottati complains of do not reach adverse employment action status.  The defendants enumerate the four incidents as (1) an attempt to relocate Ottati from the APD to the waste water treatment plant; (2) an attempt to relocate Ottati from the APD to the transportation department; (3) not allowing Ottati to use the private bathroom or to go into Brownell's office; and (4) the arrest of Ottati's husband Paul based on a complaint by Emanuele.

As stated above, Ottati alleges that after she complained about Brownell's sexual harassment by filing a complaint, she was no longer allowed to use the private bathroom at work, and she was not allowed to go into her immediate supervisor's (Brownell's) office, which had a detrimental effect on her work performance.  In addition, Ottati was allegedly informed by her union president that she would be working at the waste treatment plant, where she would be expected to show up every day, but would have no phone, no computer, and no work.  On or around September 3, 2005, Ottati was videotaped at a bocce

27

tournament, allegedly at the request of Emanuele and Brownell.  As a result of the

videotaping, there was a confrontation between Emanuele and his wife, and

Ottati's husband Paul, which resulted in two orders of protection being issued

whereby Paul had to stay away from Emanuele and his wife.  During the first week

in September of 2005, Ottati contacted Deputy Chief Vic Hugo to determine

where she would be assigned to work, and was told that Brownell did not want her

back on the APD premises.

On July 24, 2006, Ottati and Paul attended a probable cause hearing

pursuant to claims she'd filed with the New York State Department of Human

Rights, and informed the investigator of the order of protection Emanuele and his

wife had in place against Paul.  Despite this, no one objected to Paul being at the

hearing site, where he was scheduled to testify, and in fact, Emanuele and the

other parties affirmatively stated that they wanted to be in the room when Paul

testified.  On August 3, 2006, Emanuele caused Paul to be arrested for violating

the order of protection on July 24, 2006.[15]  The court finds that, taking the

cumulative actions of the defendants as a whole, it is plausible that Ottati could

---

[15]     The court notes defendants' assertion that Paul Ottati lacks standing to bring a
claim of retaliation pursuant to Title VII.  It is clear to the court that Paul Ottati is not a party to
this action, nor is he attempting to bring a claim pursuant to Title VII.  The facts pertaining to
Paul are considered only for the purpose of determining whether Ottati states a claim for
retaliation by the defendants.

satisfy the third prong of the test for retaliation, and it is a matter for the trier of fact to decide if Ottati suffered an adverse employment action.  The court also finds it plausible that a causal connection exists between the protected activity and the adverse employment actions, thus satisfying Ottati's burden to create a presumption of retaliation.  The burden shifts to the defendants, who make no attempt to articulate a legitimate, non-retaliatory reason for the alleged adverse employment action.  Accordingly, the defendants motion to dismiss Ottati's claims for retaliation pursuant to Title VII and § 1983 will be denied.

The court also notes the City defendants' argument that Ottati's substantive due process theory is subsumed by her First Amendment and Title VII claims. The court will give Ottati the opportunity to clarify this issue in an amended complaint.

### F.      Constructive Discharge

"A constructive discharge ... occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993).  "[A] constructive discharge cannot be proven merely by evidence that an employee ... preferred not to continue working for that employer.  Nor is

the test merely whether the employee's working conditions were difficult or unpleasant." Id.   "[A] claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Stetson v. NYNEX Service Co., 995 F.2d 355, 361 (2d Cir. 1993).

The defendants assert, and the court concurs, that Ottati has failed to plead constructive discharge, and while Ottati discusses this issue in her opposition by stating the pertinent law, she supplies no specific details surrounding her resignation.  With only a conclusory allegation that she was constructively forced to resign, the court cannot find that Ottati states a claim on this issue.  However, in the interest of justice, the court will give Ottati leave to amend her complaint on the issue of constructive discharge.

### G.    Conspiracy

Ottati alleges conspiracy by the City, Emanuele and Going pursuant to 42 U.S.C. §§ 1985 and 1986.  The law governing conspiracy to deprive persons of rights or privileges is codified at 42 U.S.C. § 1985(3) and states in pertinent part

that

> If two or more persons in any State or Territory conspire ...
> for the purpose of depriving, either directly or indirectly,
> any person or class of persons of the equal protection of the
> laws, or of equal privileges and immunities under the laws;
> or for the purpose of preventing or hindering the
> constituted authorities of any State or Territory from giving
> or securing to all persons within such State or Territory the
> equal protection of the laws; ... in any case of conspiracy
> set forth in this section, if one or more persons engaged
> therein do, or cause to be done, any act in furtherance of
> the object of such conspiracy, whereby another is injured
> in his person or property, or deprived of having and
> exercising any right or privilege of a citizen of the United
> States, the party so injured or deprived may have an action
> for the recovery of damages occasioned by such injury or
> deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (West 2008).

Defendants assert that Ottati's allegations of conspiracy must be dismissed
because she has not alleged any specific action taken by any defendant alleged to
have participated in the conspiracy.   The court concurs.  The only facts pertaining
to the alleged conspiracy is a single sentence at paragraph 127 of the complaint.
In addition, in her opposition, Ottati cites the law, but sheds no light on the
specific facts surrounding her allegations.  Again, the court gives leave to Ottati to
amend her complaint on the issue of conspiracy.

**H.**     **State Law Claim of Intentional Infliction of Emotional Distress**

31

The defendants seek dismissal of Ottati's state law claim on the procedural grounds that the claim is untimely and that Ottati refused to participate in a General Municipal Law § 50-h examination.  Ottati counters that § 50 is not applicable to an action to recover damages for unlawful practices under N.Y. Exec. Law § 296.  McKinney's General Municipal Law § 50-h, Examination of Claims, states in pertinent part that

> (1) Wherever a notice of claim is filed against a city ... [,] the city ... shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made, which examination shall be upon oral questions unless the parties otherwise stipulate and may include a physical examination of the claimant by a duly qualified physician...; (2) No demand for examination shall be effective against the claimant for any purpose unless it shall be served as provided in this subdivision within ninety days from the date of filing of the notice of claim....

McKinney's General Municipal Law § 50-h (West 2008).

The court concurs with Ottati's assertion and finds that "actions against a municipality to recover damages for unlawful discriminatory practices brought under Executive Law § 296 are not subject to the notice of claim requirement" set forth in § 50, and are "governed by the three-year statute of limitations" prescribed by NYSHRL. Morrison v. New York Police Department, 625 N.Y.S.2d 174, 175 (N.Y.A.D. 1 Dept. 1995).  However, under New York law, IIED claims must be

brought within one year. <u>Gillingham v. Geico Direct</u>, 2008 WL 186671 (E.D.N.Y. 2008).  "When the alleged offense is part of an ongoing pattern of harassment, the continuing tort doctrine permits a plaintiff to rely on wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit." <u>Manliguez v. Joseph</u>, 226 F. Supp.2d 377, 386 (E.D.N.Y. 2002) (internal quotations omitted).  In the present case, the court finds that the incidents precipitating Ottati's claim occurred within one year of the filing of her complaint on November 13, 2006.  Accordingly, the court finds that Ottati's complaint is timely and not procedurally barred for failure to participate in a § 50 examination.

Ottati alleges that defendants committed the common law tort of intentional infliction of emotional distress ("IIED") against her.  "To state a claim for IIED under New York law, [a] plaintiff must plead the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress." <u>Davey v. Jones</u>, 2007 WL 1378428 at * 3 (S.D.N.Y. 2007) (citing <u>Bender v. City of New York</u>, 78 F.3d 787, 790 (2d Cir. 1996)).  "To satisfy the first element, the alleged conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be

33

regarded as atrocious, and utterly intolerable in a civilized society." <u>Davey</u>, 2007

WL 1378428 at *3 (internal citations and quotations omitted).  "[I]n the

employment context, conduct rarely meets the strict standard for IIED without

some combination of public humiliation, false accusations of criminal or heinous

conduct, verbal threats, permanent loss of employment, or conduct contrary to

public policy." <u>Messer v. Board of Education of City of New York</u>, 2007 WL

136027 at * 23 (E.D.N.Y. 2007).

In the case at bar, despite the strict standard of misconduct required, the

court cannot conclusively rule out that Ottati states a claim for IIED.  The issue of

whether the defendants' conduct meets the strict standard for IIED under New

York law remains a matter for the trier of fact, and subsequent discovery will shed

light on the issue, including the severity of emotional distress, if any, that Ottati

suffered.  Accordingly, the defendants' motion to dismiss Ottati's IIED claim is

also denied.

## I.    Additional arguments by Brownell

In his motion, Brownell raises two more points not addressed <u>supra</u>.  First,

Brownell argues that the claim against him in his official capacity is duplicative,

as suits against government employees in their official capacities represent

nothing more than a claim against the municipality itself.  Ottati offers the court no counter argument as to why she brings claims against Brownell (and Emanuele) in both their individual and official capacities.  The court will give Ottati the opportunity to address this issue in an amended complaint, taking into consideration that the court has, <u>supra</u>, dismissed the individual capacity claims under Title VII.

Brownell next argues that claims pursuant to the New York State Constitution should be dismissed because New York has no enabling statute permitting damage actions for the deprivation of constitutional rights.  Again, Ottati offers no substantive counter argument.   The court finds that "no private right of action exists for violations under the New York State Constitution where a plaintiff has alternative damage remedies available under § 1983." <u>Mangano v. Cambariere</u>, 2007 WL 2846418 at * 1 (S.D.N.Y. 2007) (internal quotations omitted).  Accordingly, the court will dismiss Ottati's claims for violations under the New York State Constitution against all defendants, but only on those counts where she has stated a claim pursuant to 42 U.S.C. § 1983.

## III.   CONCLUSION

For the reasons set forth <u>supra</u>,

(1) the City of Amsterdam Police Department is hereby DISMISSED, <u>sua</u> <u>sponte</u>, from this action;

(2)  any and all Title VII claims against Emanuele and Brownell in their individual capacities are hereby DISMISSED as a matter of law;

(3)  where noted, Ottati is given leave to amend her complaint within 30 days of the filing of this opinion;

(4) the City defendants' and Brownell's motions to dismiss Ottati's retaliation claims pursuant to 42 U.S.C. § 1981 are hereby GRANTED;

(5) where the court has found that Ottati has stated a claim pursuant to 42 U.S.C. § 1983, her additional, duplicative claims for violations under the New York State Constitution are hereby DISMISSED;

(6) The City defendants' motion to dismiss the remainder of Ottati's claims is DENIED; and

(7)  Brownell's motion to dismiss the remainder of Ottati's claims is hereby DENIED.

      SO ORDERED.

April 11, 2008

Neal P. McCurn
Senior  U.S. District Judge